IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VICKY REIHART,** | : | **Civil No. 1:20-CV-379** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JRK ENTERPRISES, INC.,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant JRK Enterprises, Inc.'s motion for summary judgment. (Doc. 21.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.     BACKGROUND

This case arises from Plaintiff Vicky Reihart's former employment at JRK Enterprises, Inc., a company that provides flagging services to contractors by directing traffic through roadway construction sites. (Doc. 21-3 ¶¶ 1–2, 46; Doc. 25 ¶¶ 1–2, 46.) Reihart worked seasonally as a flagger at JRK from 1993 until she was terminated in January 2019. (Doc. 21-3 ¶¶ 2, 46; Doc. 25 ¶¶ 2, 46.) The following factual overview presents the record evidence in the light most favorable to Reihart, as the non-moving party.

During the week of August 13, 2018, JRK assigned Reihart and her co-worker, Rhonda Roe, to work at a roadway construction site operated by one of its

clients, HRI. (Doc. 21-3 ¶ 13; Doc. 25 ¶ 13.) The construction site was located in Duncansville, Pennsylvania, approximately thirty minutes from Reihart's home. (*Id.*)

Reihart and Roe were initially scheduled to work Monday through Friday of the week, but at the last minute, JRK was informed its services were not needed on Wednesday. (Doc. 21-3 ¶ 14; Doc. 25 ¶ 14.) Such scheduling disruptions occur frequently in JRK's business, which is often dependent on weather conditions, equipment availability, and contractor needs. (Doc. 21-3 ¶ 3; Doc. 25 ¶ 3.) After Reihart and Roe were informed of the cancellation by their supervisor, Ken Downs, they asked Downs to bump other employees so they could work that day, but Downs denied the request. (Doc. 21-3 ¶¶ 15–17; Doc. 25 ¶¶ 15–17.)

On Tuesday, August 14, 2018, when Downs was visiting the Duncansville job site, a verbal altercation arose between him and Reihart regarding Reihart's work hours and request for reassignment, as well as an unrelated incident regarding a co-worker who had been accused of violating company policy. (Doc. 21-3 ¶ 17–18; Doc. 25 ¶ 17–18; Doc. 21-1 at 166.) Roe and Downs also got into a heated dispute. (Doc. 25-2 at 22:2–23:18.)

The day after the altercation, Reihart called JRK's owner, Shannon Snare, and told her that Downs had acted unprofessionally at the job site. (Doc. 21-3 ¶ 19; Doc 25 ¶ 19.) Reihart also complained to Snare that she was receiving fewer hours than

in previous years, which she attributed to Downs being "out to get her." (Doc. 21-3 ¶ 19; Doc. 25 ¶ 19.) According to Snare's notes from the call, she explained to Reihart that her reduced hours were due to bad weather, cancellations, and Reihart's own decision to begin work later into the season. (Doc. 21-1 at 137.)

Soon after the call, Reihart received a written warning regarding her altercation with Downs, for "insubordination" and "instigat[ing] a verbal confrontation on the job[.]" (Doc. 21-3 ¶ 20; Doc. 25 ¶ 20; Doc. 21-1 at 139–40.)

On August 16, 2018, Reihart and Roe asked an on-site Pennsylvania Department of Transportation ("PennDOT") inspector to document their altercation with Downs. (Doc. 21-3 ¶ 21; Doc. 21-1 at 142; Doc. 25-1 at 80:4–6.) Later in the day, a representative from HRI contacted Snare and explained it had safety concerns over Downs distracting on-duty flaggers. (Doc. 21-1 at 144, 147, 149.) The representative also mentioned that Reihart and Roe had complained about their hours. (*Id.*)

On August 17, 2018, the PennDOT inspector called Snare to notify her that Reihart and Roe had documented their scheduling and harassment concerns, and that the inspector elevated the concerns to her own boss. (*Id.* at 144.) Snare's call notes indicate she was concerned about losing HRI's business over the matter. (*Id.* at 145.)

On August 18, 2018, Snare convened a meeting to address Downs's altercation with Reihart and Roe. (Doc. 21-3 ¶ 24; Doc. 25 ¶ 24.) At the meeting,

Reihart and Roe denied they felt harassed by Downs, and they twice declined to file a harassment complaint.[1] (Doc. 21-3 ¶ 25; Doc. 25 ¶ 25; Doc. 25-1 at 80:2–6.)

After Downs subsequently joined the meeting, Snare explained to Reihart and Roe that the company could not guarantee hours, and that its policies required employees to raise workplace concerns with the company's management, not its customers. (Doc. 21-3 ¶ 27; Doc. 25 ¶ 27; Doc. 21-1 at 149–50.) In addition, Snare told Reihart that she was aware Reihart had spread a rumor about JRK attempting to push out older workers. (Doc. 21-3 ¶ 28; Doc. 25 ¶ 28.) Snare explained that the rumor was not true and asked that it no longer be spread. (*Id.*)

Shortly after the meeting, Reihart learned that she was being reassigned from Duncansville to a different job in Somerset County, which was approximately one hour and fifteen minutes from her home. (Doc. 21-3 ¶ 30; Doc. 25 ¶ 30.)

On August 20, 2018, after completing her shift in Somerset County, Reihart travelled to the Duncansville site and filed with PennDOT a formal harassment complaint against Downs. (Doc. 21-3 ¶¶ 30–31; Doc. 25 ¶¶ 30–31.) Three days later, a PennDOT agent contracted Snare and instructed her to complete a formal investigation and report on Reihart's complaint. (Doc. 21-3 ¶¶ 34–35; Doc. 25

---

[1] Reihart's statement that "Downs acted in a threatening and hostile manner towards Reihart" during the meeting does not controvert this. (Doc. 25 ¶ 25.) *See* M.D. Pa. L.R. 56.1. Moreover, all witnesses who testified about this meeting indicate that Downs was not yet in the room.  (*See* Doc. 25-3 at 61:17–62:7; Doc. 25-4 at 45:10–46:3; Doc. 25-1 at 79:22–80:8; Doc. 25-2 at 34:11–35:6.)

¶¶ 34–35; Doc. 21-1 at 156–58.) The following week, Snare issued Reihart a written warning for initiating her harassment complaint outside of JRK, in violation of the company's policies; falsely representing to PennDOT that she filed a verbal complaint with the company; and falsely representing to Snare that PennDOT did not instruct her to file a verbal complaint. (Doc. 21-1 at 169; Doc. 21-3 ¶ 38; Doc. 25 ¶ 38.)

On August 28, 2018, Snare informed PennDOT that she had investigated Reihart's complaint and determined Downs did not harass Reihart. (Doc. 21-3, 25 ¶ 37; Doc. 21-1 at 165–167.) Her conclusion relied on the absence of third-party witnesses, Reihart's statements denying that she felt harassed, and Downs's statements denying any harassment. (Doc. 21-1 at 166.)

In early September 2018, Reihart made a complaint to Snare, alleging that a co-worker had slandered her back in June. (Doc. 21-1 at 171; Doc. 21-3 ¶ 40; Doc. 25 ¶ 40.) After walking off a job site, the co-worker emailed Downs and blamed Reihart for being difficult to work with and making unreasonable demands. (Doc. 21-1 at 135, 175; Doc. 21-3 ¶¶ 9, 40; Doc. 25 ¶¶ 9, 40.) Snare investigated Reihart's allegations and issued an internal report, dated October 8, 2018, concluding that the co-worker did not slander Reihart. (Doc. 21-1 at 175.) The report noted that Reihart had waited approximately two months to file the complaint, and that she did so only after it was determined that her harassment allegations against Downs were

5

unfounded. (*Id.*) In addition, the report recommended that Reihart not be recalled to work the following season. (*Id.*)

On January 4, 2019, Snare issued Reihart a termination letter stating that Reihart would not be called back to work the 2019 season. (Doc. 21-3 ¶ 46; Doc. 25 ¶ 46.)

In March 2020, Reihart initiated this action by filing a complaint against JRK. (Doc. 1.) The complaint asserts claims for age discrimination under the Age Discrimination in Employment Act ("ADEA")) and the Pennsylvania Human Relations Act ("PHRA"); sex discrimination under Title VII of the Civil Rights Act of 1964 and PHRA; and retaliation under the ADEA and PHRA. (*Id.*) JRK has moved for summary judgment on all claims. (Doc. 21.) The motion has been fully briefed and is ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the

court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)).

## III.  __DISCUSSION__

The *McDonnell Douglas* burden-shifting framework applies where, as here, the plaintiff relies on indirect evidence to establish a claim for discrimination or retaliation.[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1974); *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.7 (3d Cir. 2006) (Title VII); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (ADEA discrimination); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (ADEA and PHRA retaliation). The framework has three steps. First, the plaintiff has the burden of establishing all elements of her prima facie claim. *Willis*, 808 F.3d at 644. Second, if the plaintiff successfully makes a prima facie case, "the burden shifts to the employer who must articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (internal quotation omitted). Third, if the employer articulates a nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the asserted

---

[2] The Third Circuit has held that the PHRA is co-extensive with the federal laws prohibiting age and sex discrimination (ADEA and Title VII respectively) and the ADEA's anti-retaliation provision. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (ADEA age discrimination); *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (Title VII sex discrimination); *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (ADEA retaliation). For this reason, and because the parties do not argue any relevant distinctions, the court will analyze the PHRA claims simultaneously with their federal counterparts.

nondiscriminatory explanation was pretext. *Id.* Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981).

## A. JRK is not entitled to summary judgment on Reihart's age discrimination claims.

JRK argues it is entitled to summary judgment because Reihart cannot satisfy a prima facie claim for age discrimination, and because the company had a legitimate, non-discriminatory reason for terminating Reihart.[3] To establish a prima

---

[3] Reihart's contention that she suffered from discriminatory discipline is unsupported by the record. Reihart submits no evidence showing that other insubordinate employees were not warned or disciplined as she was. *See Chase v. Frontier Communs. Corp.*, 361 F. Supp. 3d 423, 436 (M.D. Pa. 2019) ("[T]o be considered similarly situated the employees must be similarly situated in all relevant respects, taking into account factors such as . . . the nature of the misconduct engaged in.") (internal citation omitted). Her disagreement with JRK's decision not to punish a colleague who had labeled her as difficult has no apparent connection to discrimination. And her disappointment in how her harassment complaint was handled is not indicative of discriminatory animus, particularly considering that Reihart initially denied feeling harassed during the incident and that the evidence shows that Snare actually investigated the complaint and determined the allegation unfounded.

The same is true with respect to Reihart's position that JRK discriminated against her and other older employees by providing them less favorable assignments. Despite ample opportunity to do so, Reihart has not produced competent evidence to support that the company provided younger employees with more hours (*see* Doc. 27 at 16*; infra* Section III.B), or that it assigned them to jobs with greater driving distances. *See Kania v. Potter*, 358 F. App'x 338, 343 (3d Cir. 2009) (finding that speculation "is insufficient to defeat summary judgment") (citing *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 582 (3d Cir. 1996)). Furthermore, while Reihart challenges the company over its revocation of a seniority system, that change in policy occurred more than a decade before Snare purchased the company. (Doc. 25 ¶¶ 4, 8; Doc. 27 at 48–49.) In any event, while bona fide

facie claim for age discrimination under the ADEA, a plaintiff must satisfy four elements: (1) she is over forty years of age; (2) she is qualified for the position in question; (3) she has suffered an adverse employment action; and (4) she has been "replaced by a sufficiently younger employee to permit a reasonable inference of age discrimination." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). With respect to the final element, a plaintiff may also raise an inference of discrimination by showing "similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination." *Langley v. Merck & Co.*, 186 F. App'x 258, 259 (3d Cir. 2006) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)).

Here, Reihart comfortably satisfies the first three elements of a prima facie age discrimination claim. There is no dispute that Reihart is over forty years of age and qualified as a flagger, and the evidence is clear that she suffered an adverse employment action, when after twenty-five years with the company, she was not recalled to work the 2019 season.

The fourth element is a closer call, but Reihart ultimately proffers sufficient evidence to support a finding that her termination occurred under circumstances that

---

seniority systems by employers are lawful, they are in no way mandatory. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 608–11 (1993); 29 CFR § 1625.8.

give rise to an inference of discrimination. Reihart testified that Downs referred to older workers as "senior citizens," and that he asked Reihart when she was going to retire on "numerous" occasions "throughout" her final years with the company.[4] (*See* Doc. 25 ¶¶ 56, 58, 59; Doc. 25-1 at 52:18–24.) While there is no dispute that it was Snare who decided to terminate Reihart, stray remarks by non-decisionmakers, depending on context, may be probative of discrimination. *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 558–59 (3d Cir. 2009) (relevant factors include the relationship between the speaker and employee, the temporal proximity of the statement to the adverse action, and the purpose and content of the statement). The alleged remarks, though not inherently offensive, unambiguously invoked both age and Reihart's departure from the company. The statements were made to Reihart by one of her direct superiors at the company, and at least some of them were repeatedly made, including once around the time Reihart was terminated.[5] *See Ngai v. Urb.*

---

[4] Reihart further contends that she heard from Roe, who heard from another colleague, that Downs told the colleague that he was "going to get rid of all the older employees," but this statement is inadmissible hearsay. *See Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Roe's declaration that the colleague told her as much is also hearsay, and there is no reason to believe Reihart could present this evidence in admissible form since the colleague herself denies it by affidavit. (Doc. 25-9 ¶ 3; Doc. 21-1 at 179–80; Doc. 25-1 at 62:6–64:15.)

[5] For purposes of this motion, the court considers the date of the termination decision to be sometime after October 8, 2018. Snare and Downs testified that Snare made the decision to terminate Reihart in early July 2018, but Reihart disputes the timing based on an October 2018 internal report, in which Snare recommended against recalling Reihart for the upcoming season. (Doc. 21-1 at 175.) The use of "recommend" is inconsistent with record testimony from Snare and Downs that Snare had already decided in July 2018 to terminate Reihart. (Doc. 25-3 at 65:17–66:6;

*Outfitters, Inc.*, No. 1:19-CV-1480, 2021 WL 1175155, *11 (E.D. Pa. Mar. 29, 2021) (repeated suggestions that the plaintiff retire in the months preceding his termination raised an inference of age discrimination). Against this backdrop, and considering the relatively close working relationship between Downs and the ultimate decisionmaker, a jury could find that Reihart's termination occurred under circumstances giving rise of an inference of discrimination. Reihart has therefore satisfied her burden to show a prima facie claim, and the burden shifts to JRK to articulate a legitimate, non-discriminatory reason for her termination. *See Willis*, 808 F.3d at 644.

As Reihart effectively concedes, JRK has satisfied its "relatively light" burden of articulating a legitimate reason for its decision. *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006). JRK avers that it decided to terminate Reihart in July 2018 because she engaged in relentless conflict with her co-workers, company management, and JRK's customers. (Doc. 25-6 at 4.) In support, it points to testimony indicating that several contractors asked the company not to assign

---

25-4 at 8:12–9:14.) In considering JRK's motion for summary judgment, this disputed fact must be resolved in Reihart's favor.

To the extent that Reihart objects to the authenticity of Snare's October 2018 report, the court finds that Snare's deposition testimony about her report satisfies the authentication requirement. *See United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2018) (At summary judgment, a party can meet its burden to authenticate documents by making "a prima facie showing of some competent evidence to support authentication."); Fed. R. Evid. 901(b)(1) (authentication by "testimony by a witness with knowledge.").

Reihart to their job sites, that multiple employees asked not to work with her, and that she repeatedly spread false rumors about co-workers. (Doc. 21-3 ¶¶ 5–7; Doc. 25-3 at 37:24–39:13.) Accordingly, the burden shifts back to Reihart to establish that these reasons are pretextual.

Reihart carries her burden of showing pretext. A jury could disbelieve that Snare decided to terminate Reihart in July 2018 due to conflicts with co-workers and others because it was not until three months later that she documented the decision in an internal memo—and even then she labeled it a mere "recommendation." *See Tomasso*, 445 F.3d at 708 (to discredit employer's justification the plaintiff must identify relevant "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the reason) (quoting *Fuentes*, 32 F.3d at 765). Based on this inconsistency and the reasonable inference that JRK would have a strong motive to set the date for its termination decision before the August 14 incident, the record creates a fact dispute concerning the credibility of Snare's and Downs's testimony about the termination decision. *See United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) ("[I]t is the jury's province ... to make credibility determinations and to assign weight to the evidence."). JRK's asserted reasons are further undermined by record evidence suggesting that conflicts among co-workers were commonplace at JRK and did not result in termination. (Doc. 25-2 at 39:22–41:16, 14:6–18:1) As further evidence of pretext, Reihart produced some evidence that two older JRK

employees were driven to quit in recent years because of their perceived decrease in hours and increase in driving distance. (See Doc. 25-1 at 57:23–59:12.) Considering the record as a whole, in light of these inconsistencies, Reihart has adduced sufficient evidence to support a finding that JRK's reasons for terminating her was pretextual. *See Fuentes*, 32 F.3d at 764 ("[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case."). Accordingly, JRK is not entitled to summary judgment on Reihart's claims for age discrimination.

## B. JRK is entitled to summary judgment on Reihart's sex discrimination claims.

To establish a prima facie claim for sex discrimination, the plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

JRK's motion demonstrates it is entitled to summary judgment on Reihart's sex discrimination claims for the simple reason that there is no evidence of sex discrimination. Nothing indicates that Reihart received fewer hours than male comparators during the relevant 2018 period. To the contrary, Reihart worked more hours than ninety percent of her colleagues that season—and among the eight

individuals who did receive more hours, five were women. (Doc. 27 at 44.) *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) ("[T]he plaintiff can not pick out one comparator who was not [treated adversely] amid a sea of persons treated the same as her to establish a jury question.") (citations omitted).

Reihart contends the record is not so clear cut, but the testimony she points to is devoid of substance and insufficient to create a fact issue. Roe's testimony by affidavit that she "personally witnessed" Downs "give preferential treatment to male flaggers," for example, is wholly conclusory and otherwise unsupported by the record. (*See* Doc. 25-9 at 1.) *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002) (requiring "facts[] rather than opinions or conclusions" to survive summary judgment). The only relevant details contained in Reihart's deposition testimony concern an anecdote about Reihart observing a male colleague's Facebook posts that he was working 70 hours per week. (Doc. 25-1 at 36:17–39:8.) But such evidence is hearsay, and its presentation in admissible form would do nothing to undermine JRK's showing that Reihart worked more hours than the overwhelming majority of her male co-workers.

Nor does the record support that Reihart's termination occurred under circumstances giving rise to an inference of discrimination. The only unique evidence supporting Reihart's claim that she was terminated because of her sex

concerns her own testimony that Downs once told Roe he had to "take care of the guys because they have families to raise." (Doc. 25-1 at 48:8–20.) But this too is hearsay, and there is no reason to believe the statement could be presented in admissible form considering Roe's own silence—in both written and deposition testimony—on the matter. Moreover, even ignoring admissibility concerns, the stray remark by Downs has no apparent connection to or temporal proximity with Snare's decision to terminate Reihart, and therefore would not be sufficient to raise an inference of discrimination in any event. *See Ryder*, 128 F.3d at 133. Thus, JRK is entitled to summary judgment on Reihart's sex discrimination claims.

### C. JRK is not entitled to summary judgment on Reihart's retaliation claims.

Finally, JRK argues that it is entitled to summary judgment on Reihart's retaliation claims. To establish a prima facie claim of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) the employer took adverse employment action against her; and (3) there exists a causal connection between her protected activity and the adverse employment action. *Daniels*, 776 F.3d at 193. Contrary to JRK's contention, Reihart has satisfied all three elements of her prima facie case and adduced evidence of pretext to avoid summary judgment on her retaliation claims.

First, Reihart participated in a protected activity by repeatedly advising others throughout the company that JRK was trying to get rid of older workers.[6] Protected activity includes "opposition to unlawful discrimination," so long as the employee has an "'objectively reasonable' belief that the activity [she] opposes constitutes unlawful discrimination." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008). There is no meaningful dispute that throughout her final season with the JRK, Reihart alerted numerous co-workers that JRK was trying push out older employees. Her campaign was so persistent that her message reverberated to her supervisor and eventually to JRK's owner, on more than one occasion. (*See* Doc. 25-4 at 63:8–19; Doc. 25-3 at 57:6–58:8; Doc. 21-1 at 173.)

Though JRK contends that spreading an unsubstantiated rumor is not protected activity, the record suggests that Reihart's conduct may have crossed the threshold to informal protest. The alarm she sounded about the company's alleged age discrimination practices was widespread and unremitting, continuing even in the face of her supervisor's requests to stop the warnings. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("When deciding whether a plaintiff has engaged in opposition conduct, we look to the

---

[6] Although this statement is inadmissible in substance to prove age discrimination, *see supra*, it is admissible to show the statement's effect on the listener. *See United States v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015) (statements proffered to show the effect on the listener are admissible because they are offered for a non-hearsay purpose under Federal Rule of Evidence 801(c)(2)).

message being conveyed rather than the means of conveyance.") (internal citation omitted). And while JRK may be correct that the information being spread was unsubstantiated, a reasonable person in Reihart's shoes could still have possessed a good faith belief that the company was (as she claimed) engaged in age discrimination. As outlined above, there is evidence to suggest that Reihart's direct supervisor repeatedly made comments to her suggestive of age discrimination, and that Reihart was notified by two older employees that JRK drove them into leaving the company by providing them fewer hours and assigning them to jobs with increased commutes. (*See* Doc. 25-1 at 57:23–59:12.) Construing the evidence in her favor, Reinhart has demonstrated protected activity.

Second, Reihart has established that she suffered an adverse employment action when JRK decided not to recall her the following season. Additionally, viewing the facts in a light most favorable to Reihart, she has also demonstrated that her re-assignment from Duncansville was an adverse employment action. Although reassignment is not always materially adverse, a reasonable jury could conclude this reassignment was, not only because of the initial assignment's favorable location, but also because Reihart had previously requested an assignment close to home due to her mother's poor health. (Doc. 25-1 at 35:4–8.) *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68-69 (2006) (Adverse action is sufficiently material if the action in context "well might have dissuaded a reasonable worker from making

or supporting a charge of discrimination."); *id.* at 64 ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."); *see also Model Civ. Jury Instr. 3rd Cir. 8.1.5 (2019)*, MODEL CIV. JURY INSTR. 3RD CIR. 8.1.5 (2019) (applying *White*'s interpretation of Title VII's anti-retaliation provision to the ADEA context).

Third, Reihart has adduced evidence to suggest that she would not have been terminated or re-assigned but for her complaints. Although the specific dates on which Reihart complained to co-workers are unclear, the record indicates she did so persistently throughout her final season with the company. (*See* Doc. 21-1 at 137, 173; Doc. 25-4 at 63:1–65:23.) The timeline is also clear that Snare learned in October 2018, just days before she first documented her intention not to recall Reihart, that Reihart was continuing to complain to people about the company pushing out older workers. (Doc. 21-1 at 173, 175; Doc. 25-3 at 57:6–58:8.)

Moreover, several intervening incidents between Reihart's protected activity and her reassignment and termination could be interpreted as antagonism toward her, strengthening the inference of a causal connection. *See Daniels*, 776 F.3d at 196. These incidents include Reihart's and Down's verbal altercation on August 14 and the subsequent sharply-worded warning Reihart received (Doc. 21-3 ¶ 17-20; Doc. 25 ¶ 17-20; Doc. 21-1 at 139-40, 166); Downs' display of intimidating behavior in the August 14 meeting—the same meeting in which Reihart was counseled about

her allegations of age discrimination—which included slamming his notebook and addressing Reihart with the words, "now to deal with you;" and Downs's abrupt ending of in-person communication with Reihart after the meeting. (Doc. 25-1 at 80:15–24; Doc. 21-3 ¶ 28; Doc. 25 ¶ 28; Doc. 25-4 at 63:7–64:7.) Reihart has therefore satisfied her burden of demonstrating a prima facie claim for retaliation.

Finally, Reihart has produced sufficient evidence of pretext to undermine JRK's asserted reasons for its adverse actions. A jury could reasonably discredit JRK's reasons and infer retaliatory motives for Reihart's termination on the same grounds previously discussed. *See, e.g.*, *Nicholson v. Petco Animal Supplies Stores, Inc.*, 409 F. Supp. 3d 323, 337 (M.D. Pa. 2019)(dispensing with duplicate analysis of the second and third steps of the *McDonnell Douglas* framework where the same reasons for adverse action were given in the retaliation and discrimination contexts). Moreover, Reihart's prima facie demonstration that Snare was notified of Reihart's protected activity just days before making the first recorded reference to termination bolsters an inference of pretext. And notable inconsistencies remain with respect to JRK's decision to reassign Reihart. JRK avers that Snare decided on August 13 to delay releasing Reihart's schedule for the next week, simply because she did not know whether Reihart would attend the next day's meeting. However, Snare testified inconsistently about whether she expected Roe to show up for the meeting, and she was unable to explain why Roe's schedule was not similarly withheld. (Doc. 25-3 at

46:3–47:5.) And Snare's insistence that she alone decided to reassign Reihart is at odds with Downs's testimony placing himself at the center of that decision. (Doc. 25-4 at 50:4–51:10; Doc. 25-3 at 44:23–46:22.) *See May v. PNC Bank*, 434 F. Supp. 3d 284, 299 (E.D. Pa. 2020) ("Defendant's inconsistent explanations of who made the decision [] may raise an inference of pretext.") These inconsistencies strike at the heart of JRK's decision to reassign Reihart and are sufficient to raise a fact issue on pretext.

## IV.  <u>CONCLUSION</u>

For the reasons explained above, Defendant JRK Enterprises Inc.'s motion for summary judgment will be granted in part and denied in part. An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: September 30, 2022